1819.

Chappell & Stansbury
vs
Wysham

DECEMBER.

CHAPPELL & STANSBURY vs. WYSHAM.

In 1812, (during the war between the U S and G B) C and S shipped a parcel of flour on board of a vessel, on a voyage from Baltimore to Lisbon, to be sold for them by W, the captain. The vessel was captured by a British ship of war, and carried. to Jamaica, where the goods in question, the property of C and S, were restored to W as his private adventure, who obtained the money for which the goods were sold, and to recover which C and S brought an action of assumpsit against W. To defeat the claim W offered to prove that the vessel was owned by B and freighted from him by W and S, who obtained a British license to protect the ship and cargo—Held, that as between the parties to an illegal transaction, no suit will lie by one against the other; and if the plaintiffs did know that the vessel was covered by a British licence, they would be so far considered parties to an illegal transaction, as to be incapable of sustaining this action; otherwise, if they had no knowledge of the fact.

The doctrine of constructive knowledge, on which prize courts have condemned the property of innocent claimants, is one of policy, and adopted for the purpose of preventing illicit trade, violation of allegiance, &c. But as between a principal and his agent, where the latter seeks to shelter himself behind his own illegal act, the same reason does not hold. and the law will not, on the principle of constructive notice, work injustice, by subjecting the principal to the consequences of an illicit transaction, although he had no participation in it, to enable the agent, the actual violator of the law, and entitled to no favour, to take advantage of his own wrong, and to defraud his employer,

APPEAL from Baltimore County Court. Assumpsit for money arising from the sale of goods delivered to be sold, &c. Plea, Non assumpsit.

At the trial the plaintiffs, (the appellants,) offered in evidence a bill of lading, to prove that on the 28th of August 1812, they shipped 100 barrels of flour on board the ship William Penn, whereof the defendant, (the appellee,) was master, from Baltimore to Lisbon, the dangers of the sea only excepted, and consigned to the defendant to be sold by him on account, and at the risk of the plaintiffs, they paying freight at the rate of five dollars per barrel, payable by agreement in Baltimore, with primage and average accustomed. Also the following endorsement on the bill of lading: "For the better security of the within flour a certificate, purporting that it is my property, has been furnished by Mr. Gill. This memorandum therefore is to prove against me or my heirs, assigns or administrators, that the property is actually and bona fide the property of those who appear in the within bill of lading, and that the aforesaid certificate is merely and only to be used in case of necessity, to claim in case of capture or seizure in a foreign port, inasmuch as master's adventures are generally respected.

            Ezekiel C. Wysham.
Baltimore, 28th August, 1812."

The ship sailed on the voyage, and in the course of it was captured by a British ship of war, and carried into Kingston, Jamaica, where admiralty proceedings were had against her and cargo. The defendant claimed the 100 barrels of flour as his private adventure, and they were restored to him. A certain Wilkinson and Gilpin, of Kingston, were appointed agents for the ship and cargo by the defendant, and they sold the flour in question for $1871 89, and applied the same to the disbursements of the ship, contrary to the wishes of the defendant. The defendant, on his return to Baltimore, received from James Biays, the owner of the ship, an account, in which there was a credit to the defendant of the said sum of $1871 89, and on which account a balance was due to himself. He made no objection

1819.

Chappell & Stansbury
vs
Wynham

on to this credit, or to any part of the account. The defendant then offered evidence to prove, that the ship was freighted from *Biays* by a certain *William Wood,* and a certain *Sampayo,* and that *Wood* and *Sampayo* had obtained a *British* licence for her; but gave no evidence to the jury to shew that the plaintiffs had any concern in procuring the licence; but did give in evidence, by a competent witness, that one of the plaintiffs was a young man in the counting house of *Biays;* that he was frequently on board the ship while loading, and that he knew she was not armed; that *Biays* never told the plaintiffs that the ship had said licence, nor did the witness know that they were acquainted with the fact or not; but he thought that no person at that time would have made such a shipment without they believed that there was such a licence on board the ship. The defendant offered no other evidence to shew that the plaintiffs had any knowledge of the licence. The defendant then, upon the whole evidence given by the plaintiffs and defendant, moved the court to direct the jury, that if they believed from such evidence that the said shipment of flour was covered by a *British* licence, and that that was known to the plaintiffs, then they were not entitled to recover. And the Court, [*Ward,* A. J.] did so decide; and also decided, that if the jury believed that the ship sailed under a *British* licence, the plaintiffs were not entitled to recover, whether they knew of the licence or not. The plaintiffs excepted. Verdict and judgment for the defendant, and the plaintiffs appealed.

The cause was argued in this court before BUCHANAN, EARLE, and JOHNSON, J.

*Winder,* for the Appellants, cited *The Hiram,* 1 *Wheat.* 440, 446.

*Murray,* for the Appellee, cited *Patton vs. Nicholson,* 3 *Wheat.* 207, *(notes). The Caledonian,* 4 *Wheat.* 100. *The Langdon Cheves,* Ibid 103. *The Hiram,* 1 *Wheat.* 447, *(note);* and *The Franklin,* 6 *Robinson,* 129.

BUCHANAN, J. delivered the opinion of the Court. It is contended, on the part of the defendant, 1st. That the sailing under a *British* license was illegal, and would have subjected the property on board the ship *William Penn* to capture and to condemnation in a court of prize, whether the plaintiffs had actual knowledge of the license or not, on the principle of *respondeat superior.* 2d. That an action of *assumpsit* will not lie on an illegal transaction; and therefore that the plaintiffs are not entitled to recover in this suit.

It will not admit of denial, that the sailing under the license in question was illegal; and in the case of *The Ship Hiram,* 1 *Wheaton's Rep.* 440, referred to in the argument, it was ruled, that the knowledge of the agent affected the principals, though in reality they might have

been ignorant of the fact that there was a license on board; on the ground that the knowledge of the agent was constructively their knowledge, and that such constructive knowledge precluded them from showing the want of actual notice. And acting on that principle, if this case was now for adjudication in a prize court, on a question between the captors and captured, the cargo would probably be condemned. But it is believed, that the considerations governing courts of prize, in raising such constructive knowledge for the purpose of condemnation, to the exclusion of proof of actual ignorance of the fact on the part of the claimant, do not apply to this case. It is not like the case of a claimant, and the government, or the captors, and does not involve the same principles. It is true that as between the parties to an illegal transaction no suit will lie by one against the other. And admitting that if the plaintiffs did know that the vessel was covered by a *British* license, they would be so far considered parties to an illegal transaction, as to be thereby rendered incapable of sustaining this suit, on the principle of *pari delicto, potior est conditio defendentis.* Yet if they had no knowledge of the fact, they were not *in delicto* at all, and the maxim does not apply to them. They had a right to ship their flour to *Lisbon*, and to constitute the defendant their agent; there was no illegality in that transaction. The taking of the license was a separate and distinct thing, and if not known to the plaintiffs did not enter into the contract between the parties, or form any part of the consideration on which it was founded, but was wholly unconnected with it. And to that transaction, if they were in fact ignorant of it, the plaintiffs were not parties, and are unaffected by it—The only *delictum* attached to the defendant, supposing him to have had a concealed *knowledge of the license* on board. And it would be too much to say that he by his own illegal act, not known to the plaintiffs who ought to have been informed of it, could so taint an otherwise fair transaction, as to entitle him to retain the property entrusted to his care, and apply the proceeds to his own use. The doctrine of constructive knowledge, on which prize courts have condemned the property of innocent claimants, is a creature of policy, and nurtured from necessity for the purpose of preventing illicit trade, violation of allegiance, &c. But in a case between a principal and his agent, in which the latter seeks to shelter himself behind his own illegal act, the same reason does not hold; and the law will not, on the principle of constructive notice, work injustice, by subjecting the principal to the consequences of an illicit transaction, whether he had any participation in it or not, to enable the agent, the actual violator of the law, and entitled to no favour, to take advantage of his own wrong, and to cheat his employer —Such a doctrine would lead to great abuses.

It is the opinion of this court, that the judge, who tried the cause, went too far in saying, that if the ship sailed

under a *British* license the plaintiffs were not entitled to recover, whether they knew of the license or not; and therefore the judgment is reversed.

JOHNSON, J. It appears in this case that the plaintiffs below shipped a parcel of flour on board a vessel called the *William Penn* in the year 1812, on a voyage from *Baltimore* to *Lisbon*, to be sold by the defendant, the captain of the vessel, for the plaintiffs. The vessel was captured by a *British* ship of war, and carried to *Jamaica*, where the goods in question, the property of the plaintiffs, were restored to the defendant as his private adventure, who obtained the money for which the goods were sold; to recover which this suit was brought. To defeat the claim, the defendant offered to prove that the ship was owned by one *Biays*, and freighted from him by *William Wood*, and a certain *Sampayo*, who obtained a *British* license to protect the ship and cargo.

War existing at the time of this transaction between the *United States* and *Great Britain*, it was unlawful for the inhabitants of the *United States* to trade with, or under the protection of the enemy. The voyage, under the existing circumstances, being unlawful, on the part of the defendant, it is contended, that no cause of action can arise directly or indirectly which can be sustained in a court of justice.

Nothing is more clear than that where the plaintiff and defendant are equal violators of the laws of the country, the latter must prevail in any suit between them involving the violated laws of their country, on the established maxim, that *in pari delicto, potior est conditio defendentis.* And it is evident, that if the fact of the license having been obtained was known to the plaintiffs, in fact, or by implication, they were incompetent to sustain an action either for the cargo itself, or the proceeds thereof. But as their criminality arises from the knowledge of the fact, immediately or constructively, if neither is brought home to them, they are competent to recover from their agent the money retained by him on the sale of the property. It would be extraordinary indeed, if the captain of a vessel, and consignee of the cargo, was competent to do an act against the laws of his country, without the knowledge or participation of his principal, which could free him from that responsibility imposed upon him prior to the commission of the illegal act by the captain himself. The maxim has no bearing on such a case; the plaintiffs being actually and constructively ignorant of the transaction, can never be said to be *in pari delicto.*

The defendant's counsel in the trial of the cause contended for no such principle. The court was called on to instruct the jury, that if they believed from the evidence that the shipment of the flour, for the amount of which the suit was brought, was covered by a *British* license, and *that known to the plaintiffs*, then they could not recover. That direction ought to have been given; but the court er-

red in directing the jury that the plaintiffs were incompetent to recover, whether they *knew* of the license *or not*.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.